Good morning. Peter Avenia on behalf of petitioner appellant Carl Tobey. I'd like to reserve two minutes for rebuttal. May it please the court. All right. We'll try to help you keep track of your time. Thank you. The issues in this habeas appeal are whether prosecutorial comments in closing argument amounted to misconduct sufficiently prejudicial, such as to render the trial fundamentally unfair and cause a denial of due process, and whether the state courts of Washington, in ruling to the contrary, acted unreasonably in applying clearly established federal law. In this case, there is not a dispute that there is clearly established federal law, and that is the Supreme Court decision in Darden v. Wainwright. So the issue really is whether the Washington courts unreasonably applied Darden to the facts of this case. Let me ask you this, just on the facts of this case, that essentially what you have a young victim and the allegations of molestation, and there is not any physical corroborating evidence, correct? So really, I'm just trying to, you know, putting myself in the position of the lawyers. Really this case, any way you cut this case, it's really about a he said, she said. And so this vouching that you're talking about, it really comes down to who you believe. And so if you're arguing this case and you're saying, you know, if you believe the victim, then that's that. If you don't believe the victim or you aren't sure what the victim is saying, then you acquit the guy. So, I mean, that's really what, it's kind of a capsule of what the case is about, as opposed to, say, if you were arguing this where there was corroborating evidence or it was a different type of case. So I struggle with seeing that as vouching as opposed to, hey, this is what this case is about. You've got to dig in and you've got to decide who you believe. Well, Your Honor, I think that what we're saying here goes a little bit beyond that characterization. The prosecutor in this case not only talked about the fact that it comes down to who you believe, but they misstated and diluted the burden of proof by essentially offering a false dichotomy to the jury by saying that either you believe that this child witness is telling the truth or you believe that she was evil. And even the Washington State Court of Appeals found that to be an improper comment. Yeah, maybe it's a little over the top, but do you really think that, if the jury, would the jury really convict someone of this if they thought that the victim were lying? Well, Your Honor, I think that it's still important for the jury to understand that it's not a question of saying we either believe the child victim or we have to make some kind of finding that she's evil and a liar. They acquitted on one count, didn't they? That's correct. That sort of suggests to me that the jury wasn't misled by what the prosecutor said. I don't see it that way, Your Honor, because if you remember, this case took two trials to get to any verdict at all. The first trial ended in a hung jury. That was the trial at which your client took the stand. That's correct. He elected not to in the second trial. Although his testimony was read into the record at the second trial. And so the first trial, they could not come to any decision about Guild on any count. And on the second trial, they did not believe the child witness on at least one of the counts. And I think what that shows is that this really was a close case. This was not a case of overwhelming evidence. As Judge Callahan pointed out, it did come down to a he said, she said sort of situation because there wasn't any DNA. There wasn't any medical examination indicating any injuries. There were no admissions. And so this was a case where the credibility of the child witness was absolutely crucial to the state's case. So there was no objection made at the time, was there? That's correct, Your Honor. And we've also raised some ineffective assistance of counsel claims in this matter. But as the Washington as we stand now, the ineffective assistance of counsel claim aside, there was no objection made. And so we're not really reviewing this for for DeNovo. Are we that issue? No. Well, I think that the Washington State Court of Appeals pointed out that there had been no objection. But then said that they were going to have to decide the issue on a higher standard. In other words, they because there was no objection, they asked the question of whether the statements were so flagrant and prejudicial to the point of denying him a fair trial. As to require reversal, even without an objection from the defendant. And so we're really looking at a due process. That's exactly right. I think with or without the objection, you're looking at it as a due process violation, because the case law is very clear that when you have issues of prosecutorial misconduct, the point is not to punish the prosecutor. It's to it's to focus on the effects of the comments in light of all of the evidence in the case. And there had been an objection. Are you saying that we would still just we would still be reviewing it for due process as opposed to an evidentiary ruling? It's always a due process and federal habeas. It has to have risen to the level of a due process violation. And we say that it did. It does here in the context of the entire case. So the fact so the fact that there was no objection does not weigh into the equation at all. In your view, I don't think it really weighs on the constitutional question, because essentially the Washington Court of Appeals was asking the same question that this court has to ask. Was was the effect of the comments so prejudicial as to amount to a denial of due process? And so I think you're really second guessing the state courts on the same kind of issue. So is your uncertified issue of IAC dependent on finding a constitutional error in the first instance? I think I think the there the habeas unhabeas. The court has to find that that the error amounted to a constitutional violation. But if if we didn't, then would we even get to your eyes? If you don't find that there's a constitutional violation, then I don't see how you can grant habeas relief. No, but if we don't find it, then does your ineffective assistance claim go away as well? Well, yes, that's right. Because and that's and that's what the state courts rule. They said that there was some impropriety. It didn't amount to prejudicial effect. And so any any lapses on the part of defense counsel didn't matter because if the if the effect of the comments was not sufficiently. So I'm correct that one's dependent on the other. Exactly. And so if if the state courts were wrong on the first issue, then they're wrong on the second issue. So the the the cases, I think, make it very clear that the major issue in assessing these claims is. What was the weight of the evidence in the case? And you can see that in cases like Darden versus Wainwright, Donnelly versus Christophero, the court is willing to tolerate a fair amount of improper prosecutorial conduct where the evidence is overwhelming. But that in a case where that's not true, the courts have held the Supreme Court has held in a number of cases, even going back as far as Berger versus United States and and cases, which I think is a 1935 case where the court pointed out that in a close case, a relatively small amount of prosecutorial misconduct may actually tip the scales. And I think it was it was Glasser versus the United States talked about the scales metaphor, that when if things are in equipoise, if it's a very close case, then it may not take very much prosecutorial misconduct to push the case over the edge. And and we point out to the fact that this was essentially a one witness case with no real corroboration of any kind. It took two trials to be able to to to convict Mr. Toby and the jury, even in the second trial, couldn't be unanimous on at least one of the counts. That in itself shows how close this case was. And we say that this indicates that the improprieties amounted to a due process violation. All right. Counsel, you've exceeded your time. We will give you one minute for rebuttal. Thank you. Good morning. May it please the court. I'm Alex Costin, assistant attorney general representing Washington Department of Corrections. Good morning. I have a question. I'm not going to let you say anything that I want to. I would I would just like to ask you if the court recently heard Chappelle versus Ayala, which is a case I'm pretty familiar with in that I had written a dissent in the original. Do you think that the court's decision is likely to have an impact on this case? I mean, one of the issues that the court may address is the standard used by federal courts from reviewing a state court's rejection of a constitutional claim as harmless error. Are you familiar with Ayala? No, Your Honor. I have to admit I'm not. OK. All right. Well, then I'll that's not going to help me. OK. So I apologize. OK. The only issue and maybe that my question, my argument would may help, Your Honor. But the only issue here is whether the state court's adjudication was contrary to unreasonable application of clearly established federal law, which is Darden in this case. And Mr. Tobey is trying to steer away to steer this court away from this and kind of trying to have the court review this issue again on the merits as if there was no state court adjudication. And since this is the case, of course, the one and only claim that is before this court is whether the state court apply the correct standard, which there is no just I guess there is no real dispute about that, that the state court did apply state standard, which is identical to Darden and the state courts found there was no prejudice to Mr. Tobey. They did find that one of the statements was improper, correct? Oh, yes, Your Honor. They did find that the statement was improper, but still found no prejudice. And your isn't your opponent doesn't have a point in arguing that in the temptation to step over the line for a prosecutor is greater or the case is thinner. Well, I first of all, I would respectfully disagree that the case is thin. I didn't say thin. I said, isn't the temptation to overstep greater in cases with less than overwhelming proof? Oh, especially when you have a defense attorney sitting there not saying a word. Well, I I would say that the prosecutor was not overstepping the limit. The statements were question is, isn't the temptation greater in the circumstance I just described? I guess it could be, Your Honor, theoretically, but not in this case would be. Yes, but not in this case. Why not? Well, our position is that the statements they were improper in, I would say, not improper, inartful, inartful statements. But what they incorrectly told the jury what the burden of proof was, didn't they? Well, the defense prepared to concede that. Oh, no, Your Honor, I wouldn't concede that. Because, first of all... It's okay to tell a jury that their choice is to either think that a child victim is evil or they must believe the child. Well, first of all, Your Honor, it was the defense who came up with this false dichotomy. The state never said that. This was a state response to the clear statement by the defense. It was the defense counsel who, for the first time, stated the state is giving you a false dichotomy. The state is telling you the child is either telling the truth or the child is evil. The state never said that. But the defense doesn't have the burden of proof. The prosecution has the burden of proof. So, if the prosecution tells the jury the wrong burden of proof, it's different than the defense. Would you agree? Oh, yes, Your Honor. And, again, the statement was very close to being inappropriate, very close to the line. Well, but if we're reviewing the state court and you want the deference to the state court, the state court did find one comment to be improper, correct? That's right, Your Honor. But then said it was harmless? They said there was no prejudice, correct. All right. So, then, that was my point about Ayala. If Ayala addresses the standard used by federal courts when reviewing a state court's rejection of a constitutional claim as harmless, then Ayala might have something to do with this case. Well, again, Your Honor, I apologize. I'm not familiar with Ayala. I know. But just take me at my word that that might be what the court would say. So, then, we might want to wait and see what Ayala says. I mean, it's already been argued. We'll find out in June. Do you agree with the opposing counsel that the fact that defense counsel failed to object has no place in the analysis of this issue? Well, defense failure to object is one of Darden's, I guess, one of the things that Darden instructed the courts to look at. That actually supports our argument that there was no prejudice. So, you disagree with counsel that it's irrelevant that they didn't object? Yes, I disagree with counsel. Again, since this is the APPA case, the fact that the state courts addressed this claim on the merits shows that Mr. Ann filed no prejudice. It shows that Mr. Tobey cannot show that the state court's ruling was so lacking in justification that this was an error beyond any possibility of fair-minded disagreement. What's your view on the uncertified issue? Ineffectiveness? Yes. I think there was no ineffectiveness because, as I was saying, it was the defense who came out. That was one of the defense's theories in closing, that he falsely, I guess incorrectly, told the jury, well, the state is telling you the victim is either telling the truth or she is evil, but there are a lot of possibilities in between, such as the victim has false memories. Prosecution object to that? No, they didn't. And this was the end of the several-day trial, which took 700 pages of transcript. The defense closing was 75 pages of transcript. And so that was one of the defense theories, that without coming out and telling the jury, well, the victim is a liar, he pretty much said everything else. She made up the story to get out of trouble. Evil adults planted this false memory in her mind. The sexual knowledge that she was describing is not beyond her age. So that was one of the defense theories at trial. It's really hard to imagine the defense would object when the state was repeating what the defense came up with in the first place. Even the statement that the Washington courts found improper. It was okay just to sit there and not say anything. I think that was the defense strategy in closing. And either way, in any event, Your Honor, the state courts addressed this claim on the merits, found no prejudice. And since, again, this is the Atla case, this court should first look at whether that adjudication was contrary to unreasonable application of clearly established federal law. Not whether this court, in exercising its independent judgment, would find that this was an effective assistive counsel. I would like to add that since Darden was a general test, under Yarbrough v. Alvarado, state courts had even greater leeway in their determination. And again, we're asking this court to find that the state courts properly applied the correct standard, which is Darden, which is a clearly established federal law, and correctly found there was no prejudice to Tobey. And Mr. Tobey fails his burden to prove that that adjudication was an error beyond any possibility of fair-minded disagreement, as the Supreme Court held in Harrington v. Richter and Burt v. Tittle. Thank you. Thank you, counsel. Rebuttal? Just briefly, Your Honor, I want to address a little bit this issue of invited error, because I don't think that there was any invited error in this case. As I understand it, invited error. Was there an issue before us? Well, it's one of the Darden factors of deciding whether there's prosecutorial misconduct. Well, is the prosecutor correctly stating that the defense was the one that set up this dichotomy? Yes, but the defense raised it in criticizing the state's position and said this is what the state is saying and you, the jury, should not be accepting this false dichotomy. That's not invited error, because invited error is when the defense says something improper and the prosecution says something else improper. So they should have objected during your argument because? No, because what they did was they didn't deny it. They embraced it. They didn't say that's a gross mischaracterization of the state's position and things like that. They said, yes, that's right. They completely embraced that formulation. They doubled down on it. And so I don't believe that this can be considered any kind of invited error when the state is acknowledging that, yes, that is exactly what our position is in this trial. And in addition to that. But there does seem to be a little bit of flaw in your raising in that that's, you're not, your side is not objecting to what they're saying and then you say something objectionable and then they don't object to it and the whole thing then, but then somehow it's the prosecution's fault. I don't think that what the defense was saying was. They should have stopped you from saying something objectionable. They were not saying something objectionable. They were properly characterizing what the state's position was, which was wrong. And they were told that by the Court of Appeals. So I don't think there's really any invited error. On the other hand, I think there was some extra vouching here when the state told the jury in closing argument that they said you might wonder why we only brought three counts when the victim said that it happened at least four or more times. And they said that's because we, the state, have to be convinced beyond a reasonable doubt. And so you also. So this was another example of the state essentially telling the jury that they can rely on the state's judgment, that the state had already was convinced beyond a reasonable doubt and therefore the jury could be convinced beyond a reasonable doubt. So. Thank you, counsel. Thank you. Thank you to both counsel. The case just is submitted for decision by the court.
judges: Hawkins, Rawlinson, Callahan